UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TROY DEIMERLY,

Plaintiff,

v.

HAROLD A. CLARKE, *et al.*,

Defendants.

Case No. C06-5717 RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: October 2, 2007**

Before the Court are Plaintiff's motions for temporary restraining order (Dkt. # 11), to proceed without security (Dkt. # 12) and to order the seizure of evidence (Dkt. # 13).[1] Having carefully reviewed the parties' submissions and balance of the record, the undersigned recommends that Plaintiff's motion be denied.

## I. RELIEF REQUESTED

At the time of filing these motions, Plaintff was incarcerated at Stafford Creek Corrections Center (SCCC) in Aberdeen, Washington. (Dkt. # 8 at 2). Plaintiff has since been transferred to the

[1]The motions were originally filed by Plaintiff in January prior to service of the Complaint and were, therefore, re-noted by the Court. (Dkt. # 19). Plaintiff was also granted additional time to reply to Defendants' response to his motions. (Dkt. # 33, 40).

Special Offender Unit at the Monroe Correctional Center (MCC) in Monroe, Washington. (Dkt. # 29). Defendants are Harold W. Clarke, Secretary of the Department of Corrections; Belinda D. Stewart, SCCC Superintendent; Sgt. Cheryl Sullivan, and Mailroom Staff John and Jane Doe. (*Id.* at 2-3) Plaintiff seeks an order enjoining the Defendants from preventing him from accessing the courts, from harassing, threatening or punishing him or retaliating against him for filing this action; to prevent his segregation from the general population of SCCC or transfer to any other institution during the pendency of this action. (Dkt. # 11 at 2).

## II. STATEMENT OF THE CASE

Plaintiff claims that "at the heart of [his] request for a preliminary injunction" is Defendants' violation of his access to courts by denying Plaintiffs' legal mail from leaving the institution in which Plaintiff resides. (Dkt. # 11, Attach. 1 at 6). Plaintiff sought legal counsel to represent him in another matter in Case No. C06-5002RBL. (*Id.*). In that case, Plaintiff states that the Department of Corrections (DOC) initially allowed 49 parcels to be processed and mailed out as legal mail on Plaintiff's behalf. (*Id.*). Plaintiff claims, however, that after it was noticed that he was requesting legal representation for the violation of his rights in Case No. C06-5002RBL, the DOC would not allow any of his mail to leave the institution that exceeded $4.20. (*Id.*).

Plaintiff also claims that in this case, on November 27, 2006, the DOC made over 5,000 copies for him to send out to the court, opposing counsel and 48 attorneys. (*Id.* at 8). Plaintiff claims that stated in the correspondence he mailed, he stated his intention to find counsel to hold DOC accountable for losing his legal mail which was to have been filed with this Court by October 27, 2006.[2] (*Id.*). Since the time this correspondence was copied and mailed, Plaintiff states that

[2]Defendants' motions for summary judgment in Case No. C06-5002RBL were noted for November 3, 2006; therefore, Plaintiff's response was due on October 27, 2006.

DOC staff who made the copies, H-6 OAS Mackinder and his counselor CC1 Brewer, now refuse to make copies for Plaintiff because he will use the copies in litigation against them. (*Id*.). Plaintiff says he has filed grievances about this, but has received no response. (*Id*.). See also, *Id*. at 15 (refusal of DOC to make copies for Plaintiff). Plaintiff states that DOC staff are reading his outgoing legal mail and that they are retaliating against him for pursuing his rights through the courts. (Dkt. # 11, Attach. 1 at 14, 16).

Plaintiff requests that he not be transferred from the general population at the Stafford Creek Correctional Center in retaliation for his litigation activities. Plaintiff alleges that there are no plans for the DOC to transfer him until February of 2008 and that it is stated on his facility plan that his target date to go to work release at Lincoln Park in Tacoma, Washington is set to be after February 2008. As noted above, Plaintiff has been transferred to MCC. (Dkt. # 29).

In support of his allegations, Plaintiff provides his affidavit (Dkt. # 11, Attach. # 2), and the Affidavits of Harold Bailey (*Id*., Attach. # 3), Tye Lipus (*Id*., Attach. # 4), Bruce Pennington (*Id*., Attach. # 5), Robert Junior Miller (*Id*., Attach. # 6 at 1), and Dale Schardt (*Id*., Attach. # 6 at 2-3).

Defendants oppose Plaintiff's request, stating that he has failed to carry his burden of demonstrating that he is entitled to injunctive relief. (Dkt. # 31). In support, Defendants provide the Declaration of Peter W. Berney with excerpts of Defendants' responses to Plaintiff's discovery requests. (*Id*., Exh. 1, with attachments).

**III. STANDARD OF REVIEW**

Under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA), Plaintiff is not entitled to prospective relief unless the court enters the necessary findings required by the Act:

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse

> impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

In civil rights cases, injunctions must be granted sparingly and only in clear and plain cases. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). This holding applies even more strongly in cases involving the administration of state prisons. *Turner v. Safley*, 482 U.S. 78, 85, 107 S. Ct. 2254 (1987). "Prison administration is, moreover, a task that has been committed to the responsibility of those [executive and legislative] branches and separation of powers concerns counsels a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Id*.

In order to justify the extraordinary measure of injunctive relief under Federal Rule of Civil Procedure 65, the moving party bears a heavy burden. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). A party seeking a preliminary injunction must fulfill one of two standards: the "traditional" or the "alternative." *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Although two tests are recognized, they are not totally distinct tests. Rather, they are "extremes of a single continuum." *Funds for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

Under the traditional standard, a court may issue preliminary relief if it finds that: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Cassim*, 824 F.2d at 795. Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the

possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Id*. at 795.

## IV. DISCUSSION

### A. Plaintiff Has Not Shown That He Will Suffer Irreparable Harm

To obtain preliminary injunctive relief, the moving party must demonstrate exposure to a "significant risk of irreparable harm" absent the requested judicial intervention. *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991); *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). The moving party "must do more than merely allege imminent harm," he "must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Associated General Contractors*, 950 F.2d at 1410.

To establish liability under § 1983, Plaintiff must demonstrate that Defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or federal statute. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). States must shoulder affirmative obligations to assure that all prisoners have meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). This requires states to provide free postage for indigent prisoners. *Sands v. Lewis*, 886 F.2d 1166, 1170 (9th Cir. 1989). However, unless an inmate can demonstrate some actual injury, allegations of the denial of access through a failure to provide postage cannot be maintained. *Id*.

#### 1. Preventing Outgoing Mailings

Plaintiff claims that Defendants "have violated [this] right to access the court by denying plaintiff's legal mail from leaving the institution which the plaintiff resides." (Dkt. # 11, Attach. 1, p. 6). Plaintiff sought legal counsel to represent him in Case No. C06-5002RBL. (*Id*.). In that

case, Plaintiff states that the DOC allowed 49 parcels to be processed and mailed out as legal mail. (*Id*.) In this case, Plaintiff claims that staff initially made over 5,000 copies for him, but once they improperly read his mail and noticed that he was requesting legal representation for the violation of his rights in Case No. C06-5002RBL, the DOC would not allow any of his mail to leave the institution that exceeded $4.20. (*Id*. at 8). Plaintiff claims that it was his intention by these mailings to find counsel to hold the DOC accountable for losing his legal mail which was to have been filed with this Court by October 27, 2006.

Defendants argue that under either test, Plaintiff fails to carry his burden of demonstrating he is entitled to a preliminary injunction. (Dkt. # 31). In support, Defendants point to the shear volume of documents Plaintiff filed with the preliminary injunction motions being considered here now. (*Id*.,p. 5). Further, although Plaintiff is indigent, he is not entitled to unlimited postage and copying for his legal work. (*Id*.). Pursuant to DOC policy 450.100, Plaintiff is allowed up to twenty first class envelopes a week for his legal work. (*Id*., Exh. 1, Attach. A). Plaintiff is also authorized to have ten pre-franked first class envelopes per week and can be authorized another ten first class envelopes per week if he has legal matters he is are working on. (*Id*., Def. RFP – 248, Subsection E). Outgoing Legal Mail Logs for September through November, 2006, showing the actual legal mail processed for Plaintiff during that time frame and memoranda from DOC staff to Plaintiff, verify that all of Plaintiff's letters were, in fact, mailed on September 5 and October 3, 2006. (*Id*. at Def. RFP – 173-190; 1-2, 8).

The record in Case No. C06-5002RBL reflects that Plaintiff did not file a timely response to the Defendants' motions for summary judgment, which were filed on October 11, 2006. (Case No. C06-5002RBL, Dkt. # 38, 44 and 49). Defendants' motions for summary judgment in Case No. C06-5002RBL were noted for November 3, 2006; therefore, Plaintiff's response was due on

October 27, 2006.

Plaintiff did, however, file a number of motions received by the Court during October and December of 2006. Plaintiff filed a motion for copywork (Dkt. # 56) on October 13, 2006; a motion for the appointment of counsel (Dkt. # 57) on October 16, 2006; a motion for the court to show mercy (Dkt. # 63) on December 4, 2006; a second motion for the appointment of counsel (Dkt. # 64) on December 4, 2006; Opposition to Defendants' motions for summary judgment (Dkt. # 66) on December 12, 2006; Letter to the Court (Dkt. # 67) on December 12, 2006; and Letter to the Court (Dkt. # 68) on December 13, 2006. In his motion requesting the court to show mercy (Dkt. # 63), opposition to the summary judgment motions (Dkt. # 67) and letter to the Court (Dkt. # 67) regarding the timeliness of filing his opposition to Defendants' motions for summary judgment, Plaintiff complained that Defendant had failed to mail out legal mail dated September 5, 2006 and October 3, 2006. In granting summary judgment to Defendants, the District Court noted:

> Plaintiff's Letter/Motion regarding Lost Correspondence [Dkt. #63] will be considered by the Court as an Objection to the Report and Recommendation. One basis for the recommendation to grant defendants' motion for summary judgment is that plaintiff failed to respond in opposition to the motion in violation of Local Rule CR 7(b). Plaintiff's objection relates to the failure of Safford [sic] Creek Correction Center to send out some of his legal mail dated September 5, 2006 and October 3, 2006. This lawsuit involves allegations that defendants acted with deliberate indifference to his serious medical needs. The motion for summary judgment was filed after plaintiff complained that his legal papers were not mailed out by Safford [sic] Creek; therefore, his objection does not relate to or explain why he failed to respond to defendants' motion for summary judgment. As such, plaintiff's objection is **DENIED**.

(Dkt. # 70, 71, 72).

Therefore, Plaintiff's claim that Defendants interfered with his ability to timely meet a deadline in Case No. C06-5002RBL has been adjudicated and found to be without merit.

To the extent that Plaintiff is claiming that had he been able to send out more than the 48 mailings in Case No. 06-5002RBL, his motion for counsel might have been granted, the Court's

denial of Plaintiff's motion for counsel predated these mailings and was based on Plaintiff's ability to articulate his claims *pro se,* and because Plaintiff had not demonstrated that the issues involved in his case were complex or that he had any difficulties in expressing them. (Dkt. # 59). There is also no right to have counsel appointed in cases brought under 42 U.S.C. § 1983. Although the court, under 28 U.S.C. § 1915(d), can request counsel to represent a party proceeding *in forma pauperis*, the court may do so only in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984); *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980).[3]

While it is possible that failure to provide postage and photocopies might lead to a finding that a prisoner has been denied access to the courts, it must be shown that the proceeding involves access to the courts. *See*, *Sands*, 886 F.2d at 1170. Plaintiff has not met his burden of showing an actual injury here - an instance in which he was actually denied access to the courts. Accordingly, the undersigned recommends that his motion for temporary injunction be denied.

**2. Inspection of Mail / Retaliation**

Plaintiff also complains that DOC staff is reading his legal papers without his permission and is punishing him for reaching out to the courts by refusing to make further photocopies on his behalf. (Dkt. # 11, Attach. 1, pp. 14-15). In his affidavit, Plaintiff states that his counselor CC1 Brewer read his legal pleadings and immediately consulted with OAS Shelly Mackinder. (Dkt. # 11, Attach. 2, p. 2). Plaintiff states that CCI Brewer then instructed OAS Mackinder not to make copies on Plaintiff's behalf because he had reached his limit and that "she was not going to help [him] sue [them.]" (*Id.*). Plaintiff also provides the Affidavit of Harold Bailey who states that he

---

[3]Plaintiff's motion for counsel in this case was filed on January 29, 2007 (Dkt. # 9), well after the September and October 2006 mailings at issue.

heard Brewer and Mackinder state that Plaintiff had reached his copying limit, and that they would not help [Plaintiff] sue them. (Dkt. # 11, Attach. 3, p. 1). Mr. Bailey also states that he watched staff read Plaintiff's legal papers. (*Id*.).

Prison official are not permitted to review prisoners' legal papers for legal sufficiency for sending them to court. *See Ex Parte Hull*, 312 U.S. 546, 549 (1941). Prison officials may, however, consistent with the First Amendment (1) require that mail from attorneys be identified as such and (2) open such correspondence in the presence of the prisoner for visual inspection. *See Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974); *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981).

There is no question that DOC's policy of inspecting incoming and outgoing mail is justified to prevent criminal activity and to maintain prison security. *See, e.g., O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996). The DOC has a legitimate penological interest in searching incoming and outgoing mail and limiting those entities that qualify as legal mail recipients to legal entities such as attorneys and courts involved in an inmate's judicial proceedings**.**

Plaintiff urges the Court to conclude that, upon reading Plaintiff's pleadings, Brewer and Mackinder wished to retaliate against him and did so by refusing to make copies of his legal materials. However, Plaintiff's evidence reflects that Defendants' refusal to make copies for him was based on the fact that he had reached his copying limits. While there may be an issue as to the intentions of Brewer and Mackinder in applying DOC's copying policy, there is no evidence that DOC's policy relating to postage and copying of legal work has been applied to Plaintiff in an arbitrary or capricious manner. The evidence reflects that Defendants have allowed Plaintiff to incur over $900.00 in indigent expenses for legal mail and copies. The evidence also reflects that Plaintiff's claim that his legal mail of September 5, 2006 and October 3, 2006 was investigated by

the DOC and was found to be unfounded and not substantiated. (Dkt. # 31, Exh. 1, Attach. A). Most importantly, however, the record does not reflect that Plaintiff has suffered any actual injury to his access to courts.

Accordingly, as the record does not support Plaintiff's claim that he has suffered an actual injury; that is, that he has been denied access to the courts, the undersigned recommends that his motion for preliminary injunction be denied.

**B. Plaintiff Has Not Shown That He Is Likely To Succeed On the Merits Of His Case or that the Balance of Potential Harm Favors the Moving Party**

Plaintiff has not shown that he is likely to succeed on the merits of his claims or that the balance of any potential harm is in his favor. Accordingly, the injunctive relief he seeks may be denied on this basis as well.

**C. Plaintiff's Motion for Proceeding Without Bond (Dkt. # 12)**

As Plaintiff is not entitled to a preliminary injunction, there is no need for this Court to rule on his motion to proceed without bond under Fed. R. Civ. P. 65(c).

**D. Plaintiff's Motion for the Seizure of Evidence (Dkt. # 13)**

Plaintiff also complains of ten outgoing parcels to attorneys which were not mailed because he had reached his $4.10 limit on legal mail postage for the week. (Dkt. # 11, Attach. 2, p. 2, 4-5). Plaintiff states that on January 9, 2007, his counselor CC1 Brewers showed him a box of his legal correspondence containing ten outgoing parcels addressed to legal offices, including one to the United States District Court, with a postage transfer dated December 11, 2006; and two incoming parcels from legal offices. (*Id.*). Plaintiff states that he asked for the parcels but CC1 Brewers refused to release the parcels to him. (*Id.*) Plaintiff requests that the box be seized and kept for safekeeping during this litigation. Defendants respond that Plaintiff's own declaration demonstrates that the box has been maintained in Plaintiff's counselor's office without incident. (Dkt. # 31, pp.

5-6).

Plaintiff now states that on January 19, 2007, the box containing his mail was returned to him. (*See* Plaintiff's Amended Complaint at Dkt. # 35, pp. 15-16)[4].

Plaintiff's motion to seize is signed January 18, 2007. (Dkt. # 13). Plaintiff now states that on January 19, 2007, the box containing his mail was returned to him. (Dkt. # 35, pp. 15-16). Accordingly, the undersigned recommends that this motion be denied as moot.

**V. CONCLUSION**

For the foregoing reasons, the undersigned recommends that Plaintiff's motion for preliminary injunction (Dkt. # 11), motion to proceed without security (Dkt. # 12) and motion to seize evidence (Dkt. # 13) be **DENIED**. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 2, 2007**, as noted in the caption.

DATED this 17th day of September, 2007.

Karen L. Strombom
United States Magistrate Judge

[4]Plaintiff did not seek leave of Court prior to filing his Amended Complaint. The Court will review and address this filing by separate Order. (Page references are to CM/ECF's page numbering. Plaintiff's filing contains an Amended Complaint and memoranda in support, which are not separated by exhibits. Plaintiff's corresponding page reference is Dkt. # 35, pp. 5-6).